FILED
2026 Mar-02 PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**HSI-SHENG LEE, *et al.*,**
Plaintiffs,
**v.**

**HARRIS MCKAY COMPANY, INC, *et al.*,**
Defendants.

**Case No. 1:25-cv-640-CLM**

**MEMORANDUM OPINION**

Plaintiffs Hsi-Sheng Lee and Feng Chien Lee operate a restaurant. To insure their commercial property, the Lees had Defendants Harris McKay Company, Inc. ("HMC"), and Steve Findley, an agent for HMC, procure an insurance policy that would meet their needs. Findley and HMC procured a policy that was issued by Defendant St. Paul Fire and Marine Insurance Company. The Lees' property was damaged, and St. Paul denied their claim. So the Lees sued St. Paul, HMC, and Findley for breach of contract, negligence, and misrepresentation in state court. (Doc. 1-1). St. Paul removed the case to this court based on diversity, (doc. 1), and the Lees now move to remand, (doc. 3). For the reasons explained below, the court **GRANTS** the Lees' motion to remand. (Doc. 3).

**BACKGROUND**[1]

1. *The Insurance Policy*: From 1993 through 2023, the Lees contracted with HMC to procure hazard insurance policies that protect the Lees' commercial property located at 503 S. Quintard Avenue, Oxford, Alabama (the "Property"). The Lees' restaurant, China Luck, was open at this location most of these years. But in April 2018, the Lees closed China Luck and no longer operated any business at the Quintard location.

[1] Because Plaintiffs move to remand, the court draws its facts from the complaint and views them in the light most favorable to the Plaintiffs. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

In early 2022, it was time to renew the insurance policy for the Property. So as they had done for nearly 30 years, the Lees met with Steve Findley, an agent of HMC, to discuss procuring a new policy for the Property. Specifically, the Lees wanted to make sure that the policy would protect the Property from casualties such as vandalism, theft, water leakage, and weather-related damage. When the Lees met with Findley, both Findley and HMC knew that China Luck was closed and that the Lees were not operating a business at the Property. HMC and Findley also knew that the policy they proposed to the Lees contained a vacancy provision that would exclude coverage if the Property was vacant at the time of any loss.

The Lees told Findley that they still entered the Property from time to time because they used it for storage and inventory. Findley, acting as an agent of HMC and St. Paul, calmed the Lees' concerns about the vacancy clause by telling Hsi-Sheng Lee that because the Lees still used the property to keep and utilize business inventory, the proposed policy would fully protect the Property from hazards such as vandalism, theft, weather-related damage, and water discharge, even though the restaurant was not being operated on the Property. The Lees took Findley's statements to mean that because they occasionally entered the Property, it would not be considered vacant. Therefore, the vacancy clause of the insurance policy wouldn't apply, and the Property would be insured.

Relying on Findley's representation, the Lees chose the insurance policy that Findley and HMC had proposed (the "Policy"). And because the Lees had a contract with HMC to procure the insurance for them, HMC had St. Paul Insurance Company issue the Policy for the Lees. The effective period for the Policy was February 15, 2022, through February 15, 2023.

2. *Denial of Coverage*: In January 2023, the Property was damaged by theft, vandalism, and water damage. The Lees reported the loss to St Paul. On January 19, 2023, St. Paul denied coverage for the reported losses. St. Paul's stated reason for denial was that the Property was

vacant at the time of the loss and that the Policy did not provide coverage for a vacant building. St. Paul's notice of the denial of coverage was the Lee's first indication that the Policy did not protect their property like Findley said it would. From the Lees' point of view, they had a contract with HMC to procure an insurance policy that would protect the Property from the very hazards which ultimately befell it. And HMC breached that contract by causing the issuance of a policy that fell short on that promise.

3. *The Lawsuit*: The Lees sued Defendants on December 30, 2024, in the Circuit Court of Calhoun County, Alabama. The Lees pleaded four counts: (Count 1) Breach of Contract against HMC; (Count 2) Negligence against HMC and Findley; (Count 3) Misrepresentation against HMC and Findley; and (Count 4) Breach of Contract against St. Paul. (Doc. 1-1).[2] Rather than file a Rule 12 motion to dismiss the Lees' claims, both St. Paul and HMC answered the complaint. St. Paul then propounded written discovery on the Lees, limiting their requests for admission to the amount in controversy—*i.e.*, did the Lees seek more than $75,000? When the Lees responded that they did, St. Paul removed the case to this court.[3] (Doc. 1).

St. Paul removed the case to this court based on diversity subject-matter jurisdiction. St. Paul is a foreign corporation that is incorporated and has its principal place of business in Connecticut. The Lees are citizens of Alabama. So are Defendants HMC and Findley, which would destroy diversity jurisdiction. St. Paul attempts to remedy the diversity

---

[2] The initial state court complaint named Travelers Insurance Company, Inc., Harris McKay Company, Inc., and Steve Findley as defendants. While the case was still in state court, the name of the defendant insurance carrier was corrected from Travelers Insurance Company, Inc. to St. Paul Fire and Marine Insurance Company. And in its response to the motion to remand, Harris McKay Company, Inc. stated that it is properly identified as Cunningham Insurance Inc. dba Harris McKay Insurance. Plaintiffs have not served defendant Steve Findley. Counsel for HMC has not waived service on Findley by referring to him in their response to the motion to remand. HMC's response was filed only on its own behalf, however, the legal arguments apply to both HMC and Findley.

[3] The court questions whether removal was timely, but the Lees waived this defense by not raising it within 30 days of removal. *See* 28 U.S.C. § 1447(c). So the court does not address that issue in this opinion.

problem by asserting that the Lees fraudulently joined HMC and Findley as defendants. The Lees do not dispute that the amount in controversy is satisfied here. But they argue that HMC and Findley are proper defendants and thus ask the court to remand. (Doc. 3). As a result, this opinion turns on fraudulent joinder and the diversity of the parties.

## STANDARD OF REVIEW

### A. Diversity Jurisdiction

Federal district courts are courts of limited jurisdiction. "They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal quotation omitted). So a court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* at 410. "[R]emoval jurisdiction is no exception" to this obligation *Id.* Indeed, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.*

Defendants premise their removal upon this court's diversity jurisdiction. Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount of $75,000. *See* 28 U.S.C. § 1332(a). Complete diversity requires that every "plaintiff must be diverse from every defendant." *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990); *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967 (11th Cir. 2002). And "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Id.* "[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala.*, 168 F.3d at 411.

## B. Fraudulent Joinder

### 1. Supreme Court Standard: "Reasonable Basis"

As a general principle, a plaintiff is the master of his complaint and has the right to determine how and where he will fight his battle. Put differently, the plaintiff has the power to choose his forum; to have his case adjudicated either by a state or federal court. If a plaintiff desires that the state court decide his case, he might craft his complaint in such a way to avoid federal jurisdiction. For example, the complete diversity requirement opens up the possibility that a plaintiff might add a defendant who shares state citizenship with at least one plaintiff, even though the plaintiff believes that he has no viable claim against that defendant.

"To combat this tactic, the Supreme Court created the 'fraudulent joinder' doctrine in a series of cases decided through the early 1900's. *See, e.g., Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146 (1914) ("this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"), *citing Alabama Great So. R.R. Co. v. Thompson*, 200 U.S. 206, 218 (1906); *Louisville & N. R.R. Co. v. Wangelin*, 132 U.S. 599 (1890). In a nutshell, the doctrine states that federal courts must ignore fraudulently joined defendants when determining whether diversity among the parties exists." *Alred v. Preferred Compounding Corp.*, No. 1:19-CV-1563-CLM, 2020 WL 429486, at *3 (N.D. Ala. Jan. 28, 2020).

"The Supreme Court's fraudulent joinder cases turned on the question of whether the plaintiff had a 'reasonable basis' in fact and law for including the resident defendant." *Id.* (internal citations omitted). This 'reasonable basis' standard has governed the Supreme Court's fraudulent joinder cases for the last century. *See e.g.*, *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98-99 (1921) ("As the joinder was a sham and fraudulent—*that is, without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the coemployé*—the result must be the same whether the local law makes for or against a joint

liability.") (emphasis added); *Hain Celestial Grp., Inc. v. Palmquist*, No. 24-724, 2026 WL 501733, at *9 (U.S. Feb. 24, 2026) (J. Thomas, concurring) ("As I read them, this Court's 'fraudulent joinder' precedents concerned only whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud—such as lying about a party's conduct or citizenship. These precedents were limited to cases of 'extreme abuse.'") (internal citations omitted). The Circuit Courts of Appeal, however, have taken a different approach.

**2. Eleventh Circuit Standard: "No possibility of recovery"**

The Eleventh Circuit has its own standard for fraudulent joinder that differs from judging whether the plaintiff had a "reasonable basis" for including the resident defendant. In *Crowe v. Coleman*, the Eleventh Circuit explained:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.

*Crowe v. Coleman,* 113 F.3d 1536,1538 (11th Cir. 1997). "The burden of the removing party is a 'heavy one.'" *Id.* It requires clear and convincing evidence and particularity in pleading. *See Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005). "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe,* 113 F.3d at 1538.

Going further in *Crowe*, the Eleventh Circuit framed the scope, and proper limits, of its 'no possibility of recovery' standard:

> While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b), the jurisdictional inquiry must not subsume substantive determination. Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Id.* (citation modified).

This court has expressed its concern that the Eleventh Circuit's 'no possibility of recovery' standard strays from the Supreme Court's 'reasonable basis' standard. *See Alred*, 2020 WL 429486, at *3. Just this month, Justice Thomas echoed this concern and cited the Eleventh Circuit's opinion in *Legg v. Wyeth* as one of several circuit opinions that may need revisiting. *See Palmquist*, 2026 WL 501733, at *9 (J. Thomas, concurring). That said, *Crowe* and *Legg* remain binding precedent in the Eleventh Circuit. So the court uses the Circuit's standard here.

**DISCUSSION**

Applying the Eleventh Circuit's fraudulent joinder standard, the court must answer one question: Is there *any* possibility that a state court would find that the Lees' complaint pleads at least one viable count against either resident defendant, HMC or Findley? The Lees plead three counts against HMC and Findley: (Count 1) Breach of Contract against HMC; (Count 2) Negligence against HMC and Findley; and (Count 3) Misrepresentation against HMC and Findley. (Doc. 1-1). The court starts and ends with Count 1 because this court finds that, based on the record before it, there is a possibility that an Alabama state court judge would deny a motion to dismiss Count 1. The court starts by explaining why the

Lees have pleaded enough facts to survive a Rule 12 motion, then explains why Defendants' reliance on affirmative defenses would not change that outcome.

**A. Count 1, Breach of Contract (Lees' case in chief)**

The Lees plead a straight-forward breach of contract claim against HMC: The Lees contracted with HMC to procure an insurance policy that protected the Quintard property while China Luck was closed, and HMC breached that contract when it proposed, and caused the Lees to purchase, a policy that did not adequately insure the Property. Defendants argue that a state court would dismiss Count 1 because the Lees had no contract with HMC, so there could be no breach. The court not only rejects this argument, it questions why Defendants felt comfortable making it.

Let's start with St. Paul because it removed the case on this basis. St. Paul supports its assertion that there was no contract between the Lees and HMC by pointing to HMC's denial that a contract existed in HMC's answer to the Lee's state court complaint. (Doc. 4, pp. 12-13 (citing Doc. 1-2, Defendant Harris McKay's Answer, ¶¶ 6, 7, 12)). That's it. No evidence, no discovery. Just reliance on HMC's self-serving statement pleaded as a matter-of-course at the litigation's outset. While this statement may prove to be true later, it has no evidentiary value now.

HMC is just as culpable. In its opposition to the Lees' motion to remand, HMC reiterates its position that "there is no contract between Harris McKay / Findley and the Plaintiffs." (Doc. 7, p. 3). Setting aside that HMC's statement carries no evidentiary weight, HMC goes further by stating, "Plaintiffs have not provided ***or referenced*** any contract with Harris McKay." (*Id.*) (emphasis added). That's plainly untrue, as the Lees "referenced" a contract with HMC at least four times in their complaint:

> ¶6: Plaintiffs contracted with Defendant Harris McKay… to have hazard insurance policies issued to protect the business property[.]

> ¶7: Defendant Harris McKay… [was] compensated for providing this service to Plaintiffs.
>
> ¶12: Pursuant to the contractual agreement between Plaintiffs and Harris McKay …
>
> ¶17: Defendant Harris McKay… breached their agreement with Plaintiffs …

(Doc. 1-1, pp. 4-5) (highlighted added).

If the court limited its analysis to the pleadings, the Lees would prevail because the court must take the Lees' allegations that a contract exists as true and construe the allegations in the light most favorable to the Lees. *See Crowe,* 113 F.3d at 1538. But the Circuit instructs district courts to look beyond the pleadings and consider "any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322. Only one party provides an affidavit: Hsi-Sheng Lee, (doc. 8-1). In it, Mr. Lee says that he bought the St. Paul policy "[p]ursuant to the contractual agreement between Defendant Harris McKay and me," (*id.*, p. 3). Neither St. Paul nor HMC provide a counter affidavit or deposition transcript. The only document they produce is a copy of the "Insurance Proposal for China Luck" that Findley created on HMC's behalf, (doc. 7-1). If anything, HMC's proposal further suggests that the Lees contracted with HMC to procure insurance; otherwise, why would HMC generate a formal proposal with multiple options for the Lees to consider? Was HMC doing it solely out of kindness or for compensation? Because the court must construe the evidence in the Lees' favor, the court assumes the latter (*i.e.*, HMC was performing its contractual duty).

To sum up, both the pleadings and the supplementing documents suggest the existence of a procurement agreement between the Lees and HMC. And the Supreme Court of Alabama has explained that the breach of a procurement agreement can support a viable claim like Count 1:

> When an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom. Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage. When the agent or broker has failed in the duty he assumes, the principal may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker.

*Cornett v. Johnson,* 578 So. 2d 1259, 1262-63 (Ala. 1991) (citation modified). That court added that whether there was an agreement to procure insurance is a question for the jury. *See id.* at 1263. Because this court finds that the record before it supports the existence of a procurement agreement—in fact, Defendants provide zero evidence to the contrary—the court finds that the Lees would almost certainly survive a motion to dismiss for failure to state a claim in state court.

**B. Count 1, Breach of Contract (affirmative defenses)**

Even if the Lees pleaded a viable claim against HMC or Findley, Defendants argue that two affirmative defenses still warrant dismissal of the Lees' claims against the resident defendants.

1. *Statute of Limitations*: St. Paul alone argues that the Lees' claims are barred by a two-year statute of limitations that started as soon the Policy was issued. (*See* doc. 4, p. 10). But as the court pointed out, under *Cornett*, the Lees could choose to pursue their claim against HMC for breaching the procurement agreement either as a tort or a breach of contract. *See Cornett*, 578 So. at 1263. In Count 1, the Lees elected to plead a breach of contract claim against HMC. State-law contract claims are subject to a six-year statute of limitations, not two years like tort claims. *See* Ala. Code § 6-2-34. The Lees filed their complaint well within the six-year period, so this court finds that Count 1 would survive a motion to dismiss on statute of limitations grounds.

2. *Contributory negligence/duty to read*: Both defendants argue that the Lees had a duty to read the vacancy provision of the St. Paul policy, and that the Lees' failure to read and understand that the vacancy provision would bar recovery dooms their claim as a matter of law.

Defendants are right about two things: (a) contributory negligence is an absolute defense under Alabama law and (b) contributory negligence can be found as a matter of law when dealing with insurance contracts. In *Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1249 (Ala. 2014), the Alabama Supreme Court explained,

> The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law.
>
> To establish contributory negligence as a matter of law, a defendant seeking a judgment as a matter of law must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger.

*Id.* (cleaned up) (highlight added). The court highlights the requirement that contributory negligence be "establish[ed] by undisputed evidence,"

when seeking judgment before trial because it explains why Defendants would not succeed on a motion to dismiss Count 1 as the record stands.

St. Paul removed this case, it seems, before the Lees, HMC, and Findley propounded written discovery or anyone could be deposed. That being the case, how could a state court find as a matter of law that the Lees consciously appreciated the danger of St. Paul's vacancy provision when the court has no testimony from the Lees or Findley? Moreover, how do Defendants expect this court to find that St. Paul's vacancy provision put the Lees on notice of the danger when no one produced the St. Paul insurance contract? Not only did Defendants fail to produce a copy of the St. Paul contract in their notice of removal or responsive briefs, it appears that St. Paul ***redacted it*** from the Lees' answers to St. Paul's Interrogatories and Requests for Production, which St. Paul produced as part of its documents supporting removal:

**ANSWER:** **Yes**

5. If the answer to Interrogatory Number 4 is yes, please identify the facts that form the basis of your response.

Case 1:25-cv-00640-CLM Document 1-5 Filed 04/28/25 Page 7 of 9

**ANSWER:** **The terms of the policy issued by St. Paul Insurance Co., identified as policy number BIP-2T19132A-22-42, which was for policy period 2/15/2022 through 2/15/2023, provided coverage for the damages to Plaintiff's property.**

HSI-SHENG LEE

(Doc. 1-5, p. 7);

**PLAINTIFFS HSI-SHENG LEE AND FENG CHIEN LEE'S RESPONSES TO DEFENDANT ST. PAUL INSURANCE COMPANY'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

**COME NOW** the Plaintiffs, HSI-SHENG LEE and FENG CHIEN LEE, by and through their attorney of record, Thomas W. Harmon, and respond to the Defendant St. Paul Insurance Company's Requests for Production of Documents as follows:

1. Attached are statements from Forsythe Building Company, Fibermasters, and Bar-B Roofing.

2. Plaintiffs are not making claims for contents or personal property.

3. Attached are statements from Forsythe Building Company, Fibermasters, and Bar-B Roofing.

4. Attached is the policy issued by St. Paul Insurance Company identified as policy number BIP-2T19132A-22-42 which was for policy period 2/15/2022 through 2/15/2023, which provided coverage for the damages to Plaintiff's property.

(*Id.*, p. 8) (circle added).

But that's not all. Not only do Defendants fail to produce a copy of the contract, neither even quotes the vacancy provision that St. Paul says supports its denial. If the vacancy provision's language is so clear that it warrants a finding of contributory negligence as a matter of law, then why won't Defendants quote it? Perhaps it is not so clear. Perhaps Findley read the provision to cover the Lees' losses and that's why he suggested the Lees secure it. Without reading the contract and sworn testimony from (at least) Mr. Lee and Findley about it, this court cannot know.

Because Defendants produce no evidence that the Lees appreciated the danger posed by the vacancy provision, much less the "undisputed evidence" required for judgment as a matter of law, *Colza*, 159 So. 3d at 1249, this court finds a strong likelihood that a state court would deny Defendants' motion for judgment as a matter of law on contributory negligence grounds.

—

In sum, the court finds that there is a possibility that a state court would deny a motion to dismiss or otherwise grant judgment against the Lees' breach of contract claim against HMC. *See Crowe*, 113 F.3d at 1538. As a result, the court finds that the Lees properly pleaded HMC as a defendant, thus destroying this court's purported diversity jurisdiction.

Frankly, reaching that result was easy because Defendants present no evidence to support St. Paul's removal. The difficult question was whether to make St. Paul pay the Lees' costs, expenses, and attorney's fees for having to wage this needless fight for nearly a year. *See* 28 U.S.C. § 1447(c). Ultimately, the court decided against sanctions because the Lees did not ask for them, and the court wants to avoid further delaying the start of discovery and ultimate resolution of the Lees' case. But the court still questions how Defendants could plausibly argue that ***no*** state court would deny their Rule 12 motion to dismiss the resident defendants, as Circuit precedent requires for removal, when none of the Defendants were confident enough in these arguments to file a Rule 12 motion in the state court—choosing instead to file answers that created the factual disputes they feign knowledge of here.

## CONCLUSION

For these reasons, the court **GRANTS** the Lees' motion to remand. (Doc. 3). The court will enter a separate order that instructs the Clerk of Court to remand and close this case. *See* 28 U.S.C. § 1447(c).

**DONE** and **ORDERED** on March 2, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE